CHICAGO, MILWAUKEE & ST. PAUL RY. CO., RESPONDENT,
v. SWINDLEHURST, APPELLANT.

(No. 3,279.)

(Submitted February 15, 1913. Decided March 8, 1913.)

[130 Pac. 966.]

*Foreign Corporations—Filing of Articles—License Fees—Constitution—Taxing Interstate Commerce—Due Process of Law. —Statutes—Invalidity.*

> 1. *Held*, that section 165, Revised Codes, which provides that for filing copies of charters or articles of incorporation of foreign corporations the secretary of state shall exact the same fee as domestic corporations are required to pay,—a fixed number of cents per $1,000 of the par value of the entire capital stock,—is void in so far as it affects a corporation engaged in interstate commerce, organized under the laws of a sister state, which seeks to do business in this state, in that it imposes a tax upon interstate commerce, is an imposition upon the corporation's property beyond the limits of the state, and therefore constitutes a taking thereof, without due process of law, to the amount of the fee sought to be collected.
>
> Decisions of Supreme Court of United States—Conclusive upon State Courts.
> 2. Decisions of the supreme court of the United States are conclusive upon state courts.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

ACTION by the Chicago, Milwaukee and St. Paul Railway Company against T. M. Swindlehurst, secretary of state of the state of Montana. From a judgment for plaintiff, defendant appeals. Affirmed.

*Mr. D. M. Kelly,* Attorney General, submitted a brief; *Mr. W. H. Poorman,* Assistant Attorney General, argued the cause orally.

The provisions of section 165, Revised Codes, fix fees which the secretary of state "must charge and collect" for receiving and filing articles of incorporation. So long as this statute remains the law, it is binding upon him, and he may exercise no discretion but must obey the positive mandates of the law. Subdivision 10 of this Article makes the provisions of the Article

applicable to foreign corporations. Under this law, it was and is the duty of the appellant to charge respondent company the filing fee complained of. This statute is itself a sufficient answer to the contention of the respondent.

The appellant contends that under the power vested in the state, it has the authority to prescribe the terms and conditions upon which any corporation either foreign or domestic may transact business within its confines, and pursuant to that power, it may fix the fees required to be paid by any corporation before it is entitled to recognition as a corporate entity within the state. (See *Paul* v. *Virginia,* 8 Wall. 168, 19 L. Ed. 357; *Horn Silver Min. Co.* v. *New York,* 143 U. S. 305, 36 L. Ed. 164, 12 Sup. Ct. Rep. 403; *Allen* v. *Pullman Palace Car Co.,* 191 U. S. 171, 48 L. Ed. 134, 24 Sup. Ct. Rep. 39.)

But if the state in fixing the fee has no right to take into consideration the value of the property of the corporation situate wholly without the state of Montana, then we contend that it has an undoubted right to graduate the fee in accordance with the value of the corporate property situate within the state, and if it appears that the corporation does own property, both within and without the state, the burden of showing the value of its property located within the state rests with the corporation asking to have its papers filed, and until such corporation makes such segregation the secretary of state is justified in computing the fee upon the entire value of the corporation's property as appears in its articles tendered for filing. A domestic corporation is required to pay upon its capital stock, all of which is presumed to be within the state because it is a domestic or state corporation. No foreign corporation "shall have or be allowed to exercise or enjoy within the state any greater rights or privileges than those enjoyed by" domestic corporations. (Const., Art. XV, sec. 11.) Plaintiff, a Wisconsin corporation, is subject to the jurisdiction of that state as to property and operation within it, but the laws of Wisconsin do not extend beyond the boundaries of the state, and it cer-

tainly cannot be contended that this corporation, either in its property holdings or its method of operation, is not subject to some law, and as the state law only has state operation, it must be subject to the law of the state where it operates. Hence it necessarily follows that each state does have jurisdiction and authority over interstate corporations transacting business within its borders. A question might arise as to the reasonableness of the regulation, but no question exists as to the right of the state to bring within the operation of its reasonable law all corporations as well as individuals. And it appears in this case that the respondent is engaged in an intrastate business as well as in an interstate business.

The case of *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, 54 L. Ed. 355, 30 Sup. Ct. Rep. 190, may be clearly distinguished from the case at bar. That was an action of ouster. The question there was as to the right of the state to practically confiscate the property of a corporation already in the state, rather than the right to enter the state in the first instance. The only question determined was that the company was not obliged to file under the conditions prescribed by the Kansas statutes and could not be ousted from the state for failure to file. A similar question was involved in *Pullman Co.* v. *Kansas,* 216 U. S. 56, 54 L. Ed. 378, 30 Sup. Ct. Rep. 232.

In considering the decision in the *Telegraph Company Case,* it is also proper to keep in mind the Act of Congress (14 Stats. at Large, 221), relating to the use of telegraph lines for postal, military and other purposes. This distinction was considered by this court in *State* v. *Western Union Tel. Co.,* 43 Mont. 445, 117 Pac. 93. None of these federal decisions denied to the state the right to prescribe conditions and limitations under which a foreign corporation may enter the state for the purpose of doing intrastate business. Still less do they deny the right of the state to prescribe the fee for filing an instrument which the corporation insists upon having filed with the state officer.

*Messrs. Gunn, Rasch & Hall,* for Respondent, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

The questions presented were submitted to the court below upon an agreed statement of facts, and judgment rendered for respondent, upon the authority of the following cases, decided by the supreme court of the United States, sustaining respondent's contention: *Western Union Tel. Co.* v. *State,* 216 U. S. 1, 54 L. Ed. 355, 30 Sup. Ct. Rep. 190; *Pullman Co.* v. *State,* 216 U. S. 56, 54 L. Ed. 378, 30 Sup. Ct. Rep. 232; *Ludwig* v. *Western Union Tel. Co.,* 216 U. S. 146, 54 L. Ed. 423, 30 Sup. Ct. Rep. 280; *International Text-Book Co.* v. *Pigg,* 217 U. S. 91, 18 Ann. Cas. 1103, 27 L. R. A., n. s., 493, 54 L. Ed. 678, 30 Sup. Ct. Rep. 481. In addition to the many cases reviewed and referred to in the decisions above mentioned, we cite the following, which are to the same effect: *McNaughton* v. *McGirl,* 20 Mont. 124, 63 Am. St. Rep. 610, 38 L. R. A. 367, 49 Pac. 651; *State* v. *Northern Pacific Express Co.,* 27 Mont. 419, 94 Am. St. Rep. 824, 71 Pac. 404; *State* v. *Western Union Tel. Co.,* 43 Mont. 445, 117 Pac. 93; *San Bernardino* v. *Southern Pacific Co.,* 107 Cal. 524, 29 L. R. A. 327, 40 Pac. 796; *San Francisco* v. *Western Union Tel. Co.,* 96 Cal. 140, 17 L. R. A. 301, 31 Pac. 10; *State* v. *Woodruff Sleeping & Parlor Coach Co.,* 114 Ind. 155, 15 N. E. 814; *State* v. *Canada Cattle Car Co.,* 85 Minn. 457, 89 N. W. 66; *United States Express Co.* v. *Hemmingway,* 39 Fed. 60; *United States Express Co.* v. *Allen,* 39 Fed. 712; *Clyde S. S. Co.* v. *Charleston,* 76 Fed. 46; *St. Clair County* v. *Interstate Car Transfer Co.,* 109 Fed. 741.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The Chicago, Milwaukee and St. Paul Railway Company is a railroad corporation, organized and existing under the laws of the state of Wisconsin, having a capital stock of $232,623,100. It is engaged in the operation of its railroad, as a common carrier of passengers and freight, in and through the states of Wisconsin, Minnesota, Iowa, South Dakota, and other states. The

Chicago, Milwaukee and Puget Sound Railway Company, a railroad corporation organized and existing under the laws of the state of Washington, is likewise a common carrier of passengers and freight in and through the states of Washington, Idaho, Montana, and to the Missouri river in the state of North Dakota, where the lines of the two companies connect. The St. Paul Company, desiring and being about to purchase the railroad property of the Puget Sound Company, for the purpose of availing itself of the benefits of section 4299 of the Revised Codes of Montana, which requires the filing of its charter or articles of incorporation with the secretary of state, tendered to him for filing a true copy of its articles of incorporation, and also the sum of $1 in payment of the filing fee. The secretary of state refused to receive and file the articles upon the tender so made, but demanded payment of a fee amounting to $23,447.31, basing his demand upon the requirements of the provisions of section 165 of the Revised Codes. Upon his refusal to receive and file the articles without such payment, the amount so demanded was paid, under protest, however, with notice that an action would be brought to recover it back, on the grounds that said section 165, to the extent that it authorizes and requires the secretary of state to charge and collect a fee for the filing of articles of incorporation on the basis of a percentage of the entire capital stock of the St. Paul Company, is in conflict with and repugnant to the commerce clause of the Constitution of the United States, in that it imposes a tax upon the interstate business of the company; and that the exaction and collection of the fee in question amounted to a taking of property without due process of law, in violation of the Fourteenth Amendment to the Constitution. The cause was submitted to the district court upon an agreed statement of facts sufficient in detail to present the questions raised by the position assumed by the plaintiff. The district court held the statute void, and rendered judgment for the plaintiff. The defendant has appealed.

Section 4299, *supra*, provides, among other things, that "any railroad company may sell or lease the whole or any part of its

railroad or branches within this state constructed or to be constructed, together with all property and rights, privileges and franchises pertaining thereto, to any railroad company organized or existing pursuant to the laws of the United States or of any state or territory of the United States;   *   *   *   and the railroad company of any other state or territory of the United States which shall so purchase or lease a railroad, or any part thereof in this state, or shall extend or construct its road or any portion or branch thereof in this state, shall possess and may exercise and enjoy, as to the control, management and operation of the said road, and as to the location, construction and operation of any extension or branch thereof, all the rights, powers, privileges and franchises possessed by railroad corporations organized under the laws of this state, including the exercise of the power of eminent domain:   *   *   *   Provided, further, that before any railroad corporation organized under the laws of any other state or territory or of the United States shall be permitted to avail itself of the benefits of this Act, such corporation shall file with the secretary of state a true copy of its charter or articles of incorporation."   The part of section 165, the validity of which [1] is brought in question, is the following: "The secretary of state, for services performed in his office, must charge and collect the following fees:   *   *   *   IV.   For recording and filing each certificate of incorporation and each certificate of increase of capital stock, the following amounts shall be charged: Amounts up to $100,000, fifty cents per thousand dollars.   Additional from $100,000 to $250,000, forty cents per thousand dollars.   Additional from $250,000 to $500,000, thirty cents per thousand dollars.   Additional from $500,000 to $1,000,000, twenty cents per thousand dollars.   Additional over $1,000,000, ten cents per thousand dollars.   *   *   *   X.   For filing each certified copy of charter or articles of incorporation of any foreign corporation, the same fee shall be charged as is provided for in Article IV of this section, for domestic corporations."

The question submitted for decision is whether section 165 is invalid for either or both reasons assigned by the plaintiff.   In

support of their contentions counsel for plaintiff cite *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, 54 L. Ed. 355, 30 Sup. Ct. Rep. 190, later approved by the same court in *Pullman Co.* v. *Kansas,* 216 U. S. 56, 54 L. Ed. 378, 30 Sup. Ct. Rep. 232; *Ludwig* v. *Western Union Tel. Co.,* 216 U. S. 146, 54 L. Ed. 423, 30 Sup. Ct. Rep. 280, and *International Text-Book Co.* v. *Pigg,* 217 U. S. 91, 18 Ann. Cas. 1103, 27 L. R. A., n. s., 493, 54 L. Ed. 678, 30 Sup. Ct. Rep. 481. These cases, particularly the first, are directly in point. In the first there was brought in question the validity of a provision of the General Laws of the state of Kansas, which, besides requiring a corporation seeking to engage in business in the state of Kansas, after having secured permission from the state charter board upon formal application made for that purpose, also required it to "pay to the state treasurer of Kansas, for the benefit of the permanent school fund, a charter fee of one-tenth of one per cent of its authorized capital upon the first one hundred thousand dollars of its capital stock, or any part thereof; and upon the next four hundred thousand dollars, or any part thereof, one-twentieth of one per cent; and for each million or major portion thereof over and above the sum of five hundred thousand dollars, two hundred dollars." (Gen. Stats. Kan. 1901, sec. 1264.) In an elaborate opinion by Mr. Justice Harlan, in which there is an extensive review of the prior decisions of the court upon the same or analogous questions, the conclusion was reached that it is not competent for a state legislature to require a foreign corporation engaged in interstate commerce, as a condition precedent to its beginning or continuing to do business in that state, to pay a given per cent of its capital stock, representing all of its business everywhere within and outside of the state, because (1) it operates as a burden and tax on the interstate business of the corporation, in violation of the commerce clause of the Constitution, and (2) because it is a tax upon the property of the corporation beyond the limits of the state, inconsistent with the due process of law enjoined by the Fourteenth Amendment.

It is true that the method prescribed for ascertaining the tax imposed by section 165, *supra,* is a charge of a fixed number of cents per $1,000 of the par value of the capital stock, graduated in proportion to the amount of the capital stock; whereas, under the Kansas statute, up to $400,000 it was to be calculated by a graduated percentage, and thereafter at a uniform fixed sum per $1,000,000. This divergence in method, however, is immaterial. The vice of such legislation, as the reasoning of the court shows, consists in the nature of the burden imposed by it, and not in the amount. The method adopted for the ascertainment of the amount cannot be material, so long as the result is the same. This is apparent from the decision in *Ludwig* v. *Western Union Tel. Co.* In this case was brought in question the validity of a statute of the state of Arkansas, the purpose and effect of which was the same as that of the Kansas statute, *supra.* It required the payment of a license tax upon the whole of the capital stock of both domestic and foreign corporations, to be ascertained by a charge of a fixed sum, the amount of which was graduated according to the amount of the capital stock. It was held open to the same objection as was the Kansas statute. The case of *Pullman Co.* v. *Kansas*, and that of *International Text-Book Co.* v. *Pigg,* involved other provisions of the Kansas statute; but in both the court approves the decision in *Western Union Tel. Co.* v. *Kansas* as the settled law on the subject, and in the latter of them expressly declares that section 1283 of the General Statutes of Kansas, which required foreign corporations engaged in interstate commerce, as a condition precedent to doing business in the state, to obtain a license, was invalid under the commerce clause of the Constitution.

This court is concluded by these decisions, and hence must [2] declare section 165, *supra,* in so far as it applies to foreign corporations seeking to engage in interstate commerce in this state, inoperative and void.

Some effort was made by counsel for appellant to maintain the contention that in each of the cases cited the question involved was whether the corporations which were already doing busi-

ness in a state should be excluded therefrom; whereas in this case the question is whether a corporation shall be permitted to come into this state to engage in business. A reading of these cases, however, leads to the conclusion that this difference in the situation of the parties cannot affect the result.

The judgment is affirmed.

*Affirmed*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.

