STATE EX REL. GENERAL ELECTRIC CO., RELATOR, *v.* ALDERSON, SECRETARY OF STATE, RESPONDENT.

(No. 3,447.)

(Submitted February 24, 1914. Decided March 25, 1914.)

[140 Pac. 82.]

*Foreign Corporations—Articles of Incorporation—Filing Fees— Interstate and Intrastate Commerce—Licenses—Constitution —Statutory Construction.*

Foreign Corporations—Articles of Incorporation—Filing Fee—Nature of Exaction.
1.  *Held,* that the fee fixed by section 165, Revised Codes, based on the amount of capital stock, for the recording and filing of certificates of incorporation in the office of the secretary of state, is not a property tax but a license exacted of every corporation, domestic as well as foreign, engaged in intrastate business, for the privilege of doing business within the state, enjoying the protection of its laws and the pecuniary advantages afforded by its markets.

Same—Right to do Business—Nature of Right.
2.  The right of a foreign corporation to engage in purely local private business in this state is a matter of grace on the part of the commonwealth, and not a matter of right on the part of the corporation.

Same.
3.  *Semble:* In view of the principle announced in paragraph 2 above, it would seem that, in the absence of any contract right of a foreign corporation to engage in business in this state, the state might directly exclude it altogether, or do so indirectly by attaching impossible or unreasonable conditions, or such as transgress some constitutional guaranty secured to the corporation in the state of its domicile.

Statutory Construction.
4.  In construing a state statute, courts must adopt that construction which, without doing violence to the fair meaning of the words used, brings the Act into harmony with the provisions of the federal Constitution and laws.

Foreign Corporations—Articles of Incorporation—Filing Fee—Validity of Statute.
5.  Section 165, Revised Codes, though inoperative so far as it authorizes the secretary of state to exact prescribed fees for recording and filing certificates of incorporation of foreign corporations engaged in *interstate* commerce, is valid as to such corporations seeking· to engage in strictly private, *intrastate* business. ·

Original application for writ of mandate, by the state, on relation of the General Electric Company, against A. M. Alderson, secretary of state, to compel the latter to file a copy of its charter, *etc.* Dismissed.

*Messrs. Gunn, Rasch & Hall,* for Relator; *Mr. M. S. Gunn* argued the cause orally.

*Mr. D. M. Kelly,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Poorman* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The General Electric Company is a New York corporation with a capital stock of the par value of $101,378,600, and owns property of the value of more than $100,000,000, all located in states other than Montana. Desiring to conduct business in this state, the company tendered to the secretary of state, for filing, a duly authenticated copy of its charter, a properly verified statement, a duly executed certificate appointing an agent, and the agent's acceptance of the office, together with a fee of $13. The secretary of state refused to file any of the papers unless a fee of $10,322.86 was paid; hence this proceeding.

Sections 4413 and 4414, Revised Codes, provide that a foreign corporation of the character of this one, before doing business in this state, must file with the secretary of state: (a) A duly authenticated copy of its charter; (b) a verified statement showing the amount of its capital stock, its assets, liabilities, *etc.;* (c) a certificate appointing a local agent upon whom service of process can be made; and (d) the written consent of the agent to act. Section 165, Revised Codes, fixes the fees which the secretary of state shall collect as follows: ''IV. For recording and filing each certificate of incorporation and each certificate of increase of capital stock, the following amounts shall be charged: Amounts up to $100,000.00, fifty cents per thousand dollars. Additional from $100,000.00 to $250,000.00, forty

cents per thousand dollars. Additional from $250,000.00 to $500,000.00, thirty cents per thousand dollars. Additional from $500,000.00 to $1,000,000.00, twenty cents per thousand dollars. Additional over $1,000,000.00, ten cents per thousand dollars. Providing that no fee for filing any articles of incorporation or increase of capital stock shall be less than $20.00, except religious societies, churches, and organizations for religious purposes, not having a capital stock, and not being organized for the purpose of profit. * * * X. For filing each certified copy of charter. or articles of incorporation of any foreign corporation, the same fee shall be charged as is provided for in Article IV of this section, for domestic corporations.''

It is conceded that the papers tendered for filing were properly prepared and tendered, and that the amount of the fee demanded is correct, according to the schedule above. We are also advised by counsel that the business to be conducted by relator, if admitted into this state, will be strictly private, local, or intrastate business, and we are thereby relieved from any consideration of questions affecting interstate commerce or agencies [1] of the government. It is insisted, however, that section 165 above is invalid, as applied to this relator and other foreign corporations similarly situated, because it seeks to impose a tax upon property, none of which is within the state or within the jurisdiction of the taxing power of the state; and it is insisted that this doctrine is established and further discussion foreclosed by the decision in *Chicago, M. & St. P. Ry. Co.* v. *Swindlehurst,* 47 Mont. 119, 130 Pac. 966. That case was determined upon an agreed statement of facts which recited that the Chicago, Milwaukee and St. Paul Railway Company is a Wisconsin corporation, engaged as a common carrier in interstate commerce, and owning and operating lines of railway in South Dakota and other states; that the Chicago, Milwaukee and Puget Sound Railway Company is a Washington corporation, likewise engaged in interstate commerce as a common carrier and owning and operating a line of road from the Puget Sound across Montana to Mowbridge, South Dakota, where it connects with

the road first named above; that the Milwaukee company was then about to purchase the line of the Puget Sound company, and desiring to secure the advantages afforded by section 4299, Revised Codes, tendered to the secretary of state a copy of its charter and $1 as a filing fee. The secretary of state declined to file the paper unless a fee of $23,447.31, computed under subdivisions IV and X of section 165, Revised Codes, was paid. It was assumed that it was necessary for the Wisconsin corporation to file a copy of its charter with the secretary of state. It was contended by its counsel that the exaction of a fee under section 165, Revised Codes, based upon the entire capital stock, interfered with the interstate business of the company and imposed a tax upon property situated without the state of Montana. After stating the questions involved and the contention of the railway company, this court, speaking through the Chief Justice, said: "The question submitted for decision is whether section 165 is invalid for either or both reasons assigned." Reference was then made to the decisions in *Western Union Tel. Co.* v. *Kansas*, 216 U. S. 1, 54 L. Ed. 355, 30 Sup. Ct. Rep. 190, *Pullman Co.* v. *Kansas*, 216 U. S. 56, 54 L. Ed. 378, 30 Sup. Ct. Rep. 232, *Ludwig* v. *Western Union Tel. Co.*, 216 U. S. 146, 54 L. Ed. 423, 30 Sup. Ct. Rep. 280, and *International Text-Book Co.* v. *Pigg*, 217 U. S. 91, 54 L. Ed. 678, 27 L. R. A. (n. s.) 493, 30 Sup. Ct. Rep. 481, 18 Ann. Cas. 1103, and of these it was remarked: "These cases, particularly the first, are directly in point." A review of those cases was then made, and it was said: "This court is concluded by these decisions, and hence must declare section 165, *supra,* in so far as it applies to foreign corporations seeking to engage in interstate commerce in this state, inoperative and void." Nothing whatever is said in the opinion upon the contention made that the statute seeks to impose a tax upon property of the company without the state, and that question will now be treated as *res integra.*

That the fee demanded by section 165 is not a property tax at all is plainly apparent. Article XII of our state Constitution provides for public revenue to be raised by taxation. Section 1

enjoins upon the legislature the duty to prescribe such regulations as will secure a just valuation for taxation of all property, except such as is or may be exempt. Sections 11 and 7 provide:

"Sec. 11. Taxes shall be levied and collected by general laws and for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

"Sec. 7. The power to tax corporations or corporate property shall never be relinquished or suspended, and all corporations in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal and other purposes, on real and personal property owned or used by them and not by this Constitution exempted from taxation."

The rate of taxation for state purposes is fixed by section 9, as amended, and can never exceed two and one-half mills on each dollar of valuation. The property exempt from taxation is enumerated in section 2499, Revised Codes. Section 2502 provides: "All taxable property must be assessed at its full cash value. * * *"

The fee demanded by section 165 is graduated according to the par value of the company's capital stock, without reference to the full cash value of the property owned by the corporation. For instance: A corporation with a capital stock of $100,000 is required to pay only $50, though its property represented by that capital stock may be worth a million dollars. Furthermore, this fee is not a recurring one; it is demanded but once. That the legislature did not treat it as a property tax is indicated by the failure to provide any means for its collection. A foreign corporation may be denied admission here, but it cannot be made to pay the fee in the same sense that any other tax-paying individual or corporation may be coerced into paying property taxes. This fee does not become a lien upon any property which the corporation may have in this state, as does a property tax under section 2600, Revised Codes. The amount of this fee is fixed by law and does not vary from time to time, while the rate of taxation for property taxes is fixed by the legislature

for the state and by the county boards for the respective counties, and varies from year to year with the necessities for greater or less revenue.   These considerations justify our conclusion that the fee is not a property tax.   It is an impost, an excise, or a license tax exacted of every corporation, domestic as well as foreign, engaged in intrastate business, for the privilege of doing business within this state, enjoying the protection of our laws and the pecuniary advantages afforded by our markets. It is authorized by our state Constitution, which declares: "The legislative assembly may also impose a license tax, both upon persons and upon corporations doing business in the state." (Art. XII, sec. 1.)   The par value of the capital stock is merely made the standard or measuring rod, upon the assumption, whether justified or not, that the advantages gained by corporations in transacting business within this state will be in some measure proportioned according to the amount of their capital stock.

We are unable to appreciate the distinction attempted to be made by the supreme court of the United States between the Kansas statute, considered in *Western Union Tel. Co.* v. *Kansas,* above, and held to impose a general tax upon all of the property of the company, and the statute of Massachusetts, considered in *Baltic Min. Co.* v. *Massachusetts,* 231 U. S. 68, 58 L. Ed. 000, 34 Sup. Ct. Rep. 15, and held to be a mere excise; but, if we have accurately characterized our section 165 above, the latest pronouncement by that court justifies the existence of our statute and the method employed for determining the amount of the tax.   It may be that our legislation is unwise in failing to fix a reasonable limit upon the amount to be exacted from any one corporation; but, if the authority is lodged in the state to exclude the relator altogether or to impose such terms to its admission here as may seem expedient, then the amount of the fee affords no tenable ground of opposition to the validity of the statute.   If the amount demanded is more than the local, private business of relator will justify it paying, the tax can be avoided altogether by a renunciation of its intention to do such

business. The state does not seek to compel it to engage in business here, nor does it attempt to collect this fee in the sense that property taxes or ordinary debts may be enforced. It merely says to the relator: You may engage in local, private business in Montana if you conform to the conditions imposed; otherwise you must stay out.

If any one question can ever be deemed settled, this one ought [2] to be settled, *viz.:* that a foreign corporation engages in purely local, private business in this state as a matter of grace on the part of the state, and not as a matter of right on the part of the corporation. From the decision in *Bank of Augusta* v. *Earle,* 13 Pet. 519, 10 L. Ed. 274, to the present day, that principle has been announced so often that further discussion of it ought to be deemed foreclosed.

In *Paul* v. *Virginia,* 8 Wall. 168, 19 L. Ed. 357, the court, in considering the status of a foreign corporation, said: "The recognition of its existence even by other states, and the enforcements of its contracts, made therein, depend purely upon the comity of those states—a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy. Having no absolute right of recognition in other states, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities; or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion."

In *Hooper* v. *California,* 155 U. S. 648, 39 L. Ed. 297, 15 Sup. Ct. Rep. 207, there was involved the right of the state to exact a license fee and certain security from a foreign corporation seeking to engage in business in California, and of that right the court said: "The state of California has the power to ex-

clude foreign insurance companies altogether from her terri-
tory, whether they were formed for the purpose of doing a fire
or a marine business. She has the power, if she allows any
such companies to enter her confines, to determine the condi-
tions on which the entry shall be made. And, as a necessary
consequence of her possession of these powers, she has the right
to enforce any conditions imposed by her laws as preliminary
to the transaction of business within her confines by a foreign
corporation, whether the business is to be carried on through
officers or through ordinary agents of the company, and she
has also the further right to prohibit a citizen from contracting
within her jurisdiction with any foreign company which has not
acquired the privilege of engaging in business therein, either in
his own behalf or through an agent empowered to that end.''
The doctrine was reaffirmed in *Waters-Pierce Oil Co.* v. *Texas,*
177 U. S. 28, 44 L. Ed. 657, 20 Sup. Ct. Rep. 518.

No right guaranteed by the Constitution of the United States
has been found more conveniently useful to corporations than
the provision conferring upon federal courts jurisdiction of con-
troversies arising between citizens of different states, and yet a
state statute has been upheld which provides for revoking
the license of a foreign corporation engaged in local, private
business, if it removes a cause to the federal courts. (*Doyle* v.
*Continental Ins. Co.,* 94 U. S. 535, 24 L. Ed. 148; *Security Mut.
Life Ins. Co.* v. *Prewitt,* 202 U. S. 246, 50 L. Ed. 1013, 26 Sup.
Ct. Rep. 619, 6 Ann. Cas. 317.)

The foregoing would seem to justify the conclusion that, in
[3] the absence of any contract right on the part of this relator
to engage in business here, the state might exclude it altogether,
and, as the corollary of that, might accomplish the same purpose
by attaching impossible conditions, or conditions altogether un-
reasonable, or which transgress some constitutional guaranty
secured to the company in the state of its domicile.

However, in *Baltic Min. Co.* v. *Commonwealth,* above, the
authority of the state over the foreign corporation appears to be
made to depend somewhat upon the validity of the reason which

it assigns for its action, as evidenced by the following: "For example, a state may not say to a foreign corporation: You may do business within our borders if you permit your property to be taken without due process of law. * * * To allow a state to exercise such authority would permit it to deprive of fundamental rights those entitled to the protection of the Constitution in every part of the Union." Whatever may finally be determined to be the extent of state control over a foreign corporation situated as relator is, we are satisfied that the exaction demanded in this instance does not infringe upon any right of this relator which is guaranteed to it by the Constitution or laws of the United States, and that the state may rightfully say: You may come into this state and engage in local, private business only on condition that you pay the fee required under section 165, above. (*Kehrer* v. *Stewart*, 197 U. S. 60, 49 L. Ed. 663, 25 Sup. Ct. Rep. 403; *Allen* v. *Pullman's Palace Car Co.*, 191 U. S. 171, 48 L. Ed. 134, 24 Sup. Ct. Rep. 39; *Pullman Co.* v. *Adams*, 189 U. S. 420, 47 L. Ed. 877, 23 Sup. Ct. Rep. 494.)

But it is urged that, since section 165 above has been declared to be invalid, the secretary of state did not have any authority for demanding the fee which he attempted to collect in this instance. Assuming the premise, the conclusion is inevitable; but we are not prepared to agree with counsel that section 165 was held to be invalid in the *Swindlehurst Case,* above, though it must be conceded at once that there is to be found, in the language employed in the opinion, some justification for the argument now advanced. That was an action to recover a filing fee paid under protest, and the one question presented for determination was: Can the secretary of state demand the fee mentioned in section 165, subdivisions IV and X, from a foreign corporation seeking to engage in interstate commerce in this state? We held that he cannot, because to permit him to do so would impose a burden upon interstate commerce, and we epitomized our conclusion in the one sentence: "This court * * * must declare section 165, *supra,* in so far as it applies to foreign

corporations seeking to engage in interstate commerce in this state, inoperative and void.'' In our opinions we do not always employ language exactly apposite. The result rather than the form of expression is the factor kept in view, and is the factor which ought to be considered alone in determining what was decided in any given case. But, if we erred in our form of expression or in the reasons which prompted our conclusion, no false pride will deter us in the least from making correction at the earliest possible opportunity.

It is an elementary rule of constitutional law and of statutory construction that the court shall adopt that construction of a [4] given state statute which, without doing violence to the fair meaning of the words used, brings the statute into harmony with the provisions of the Constitution and laws of the United States. (*Grenada County Supervisors* v. *Brown,* 112 U. S. 261, 28 L. Ed. 704, 5 Sup. Ct. Rep. 125.) It will not be assumed that our legislature intended to usurp powers prohibited to it (*Sykes* v. *Mayor,* 55 Miss. 115) ; and, since it had been determined long prior to the enactment of section 165, above, that such an exaction from an interstate carrier could not lawfully be made by a state, we must asssume that our lawmakers legislated in view of the declared policy of the law and intended to include only such foreign corporations as could lawfully be subjected to state regulation or control.

It is true the terms used in section 165 are general—''any foreign corporation''; but these general words are to be construed [5] so as to bring the statute into harmony with controlling statutory or constitutional provisions rather than to attach to them a meaning which assumes that the legislative assembly intended to usurp a power specifically denied to it by the Constitution of the United States. (*Marshall* v. *Grimes,* 41 Miss. 27.) This rule was enforced in *Ford* v. *City of Great Falls,* 46 Mont. 292, 127 Pac. 1004, where we considered the provisions of section 3386, Revised Codes, which in terms subject all property within a given district to the tax for special improvements. We held that, since the legislature could not authorize a tax or

assessment against property of the United States, the general terms of the statute would be held to include only such property as could be made subject to the assessment. The distinction between section 165, above, and the statute considered in *State* v. *Northern Pac. Express Co.*, 27 Mont. 419, 94 Am. St. Rep. 824, 71 Pac. 404, and the assessment treated in *State* v. *Western Union Tel. Co.*, 43 Mont. 445, 117 Pac. 93, is too clear to require comment.

To have been technically exact, we should have said in the *Swindlehurst Case* that section 165 does not have any application to foreign corporations seeking to engage in interstate commerce in this state. This is our holding, and, thus stated, the statute is left intact to apply to foreign corporations over which this state has the right to exercise some degree of regulation or control.

Our conclusion is that the secretary of state was fully justified in demanding the fee under subdivisions IV and X of section 165, and for this reason the motion to quash the alternative writ of mandate heretofore issued is sustained, and this proceeding is dismissed.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

Rehearing denied April 27, 1914.