STATE, RESPONDENT, *v.* KAHN, APPELLANT.

(No. 4,267.)

(Submitted April 29, 1919.   Decided May 20, 1919.)

[182 Pac. 107.]

*Criminal Law—Sedition—Constitution—Congress—War Powers —Free Speech—Intent—Statutes and Statutory Construction —Offer of Proof—Declarations—Hearsay—Instructions—Exceptions—Evidence—Sufficiency.*

Sedition—Statutes—Constitution—Congress—Exclusive War Powers.
  1.  *Held*, that the Act defining sedition (Chap. 11, Extra. Session 1918) and prescribing punishment for it, is not unconstitutional as infringing upon the exclusive war powers of Congress.
Same—Constitution—Free Speech.
  2.  *Held*, that the Act above does not violate the guaranty of free speech contained in either the federal or state Constitution.
Same—Police Regulations—Statutes—Criminal Intent.
  3.  The legislature may, in the exercise of police power, prohibit certain Acts for the preservation of the peace, the safety of the people, *etc.*, without making evil intent an ingredient of the offense other than the general intent implied from a violation of the statute.
Same.
  4.  The Sedition Act, being a general police regulation, *held* valid under the rule above, as against the objection that it fails to make a criminal intent an ingredient of sedition.
Same.
  5.  *Held*, that the provision of the Sedition Act prohibiting the uttering, in time of war, of language "calculated" to incite or inflame resistance to constituted authority, *etc.*, is broad enough to include intent, the word "calculate" meaning, among other things, to intend, to purpose, to plan or design.

Statutory Construction—Rule.

6. In testing the validity of a statute subject to two constructions, one of which will uphold its validity, while the other will condemn it, the former will be adopted if it can be done without violence to the fair meaning of the words.

Sedition—Self-serving Declarations—Offer of Proof—Proper Rejection.

7. An offer of proof of declarations of defendant tending to show his loyalty to the government, made out of court, was properly rejected.

Trial—Instructions—Appeal and Error.

8. Of an instruction given at the instance of the state without objection from defendant, and of one given at his own instance, he was in no position to complain on appeal. (Rev. Codes, sec. 9271.)

Same—Argumentative Instruction.

9. A tendered instruction, argumentative in form, was properly refused.

Same—Instructions—Applicability to Evidence.

10. Where the only evidence upon the subject of defendant's reputation related to his reputation for loyalty, an instruction upon that subject must have been understood by the jury as applicable to that evidence alone and not as referring to his general reputation.

Sedition—Evidence—Sufficiency.

11. Evidence *held* sufficient to warrant conviction of defendant for the crime of sedition in uttering language, the natural tendency and reasonably probable effect of which was to hinder the successful prosecution of the war.

Same—Statute—Construction—Precedents.

12. The construction of the Federal Espionage Act (40 Stat. 217, Chap. 30) by the supreme court of the United States, though not conclusive upon the state supreme court in construing the Sedition Act, is entitled to the greatest respect, the two statutes being similar in all respects.

*Appeal from District Court, Carbon County; A. C. Spencer, Judge.*

BEN KAHN was convicted of seditious utterances, and appeals from the judgment and from an order denying his motion for a new trial. Affirmed.

*Mr. H. C. Crippen,* for Appellant, submitted a brief and argued the cause orally.

The court was without jurisdiction because of the unconstitutionality of the sedition law of the state. The Sedition Act violates the federal Constitution in two important particulars: First, it assumes to legislate with regard to the war-making power; second, it violates that Constitution and the Constitution of this state as to freedom of speech and of the press.

*War-making Power:* The beginning and the end of war is exclusively in the Congress of the United States. This being so, the subject matter of war is national in its scope. It affects alike each and every citizen and each and every aggregation of citizens, commonly called the several states, and with regard to that subject, or any other peculiar to the national government, the failure of Congress to act does not give the state any right to legislate with regard to the same. "The matters upon which the silence of Congress is equivalent to affirmative legislation are national in their character, and such as to fairly require uniformity of regulation upon the subject matter involved, affecting all the states alike." (*Western Union Tel. Co.* v. *James,* 162 U. S. 650, 40 L. Ed. 1105, 16 Sup. Ct. Rep. 934.) That is, each citizen must bear the same burden, but no two states might pass the same "sedition" laws or prescribe the same penalties, and so different citizens would be differently affected with regard to the war. (*Pappens* v. *United States,* 252 Fed. 55, 57, 164 C. C. A. 167.)

If the making of war is hampered and there is a question whether or not the power will be exercised, it is certainly the duty of Congress, under the Constitution, to cut away the obstruction. The state may feel the need of federal action, but it cannot step in and assume the burden. (*Knox* v. *Lee,* 12 Wall. (U. S.) 457, 20 L. Ed. 287, 310.)

"Sedition" is a crime against the sovereign—the nationality—and is the willful doing of something to impede that nationality in protecting itself. Is it not reasonable to suppose that that sovereign would say what constituted "sedition," and if it did not say, why should another speak?

The war in which we are now engaged and which is about to close is a war of the whole people of this country; it is a war of our nationality; it is not a war of the several states, or any one of them; so anything done or said in connection therewith cannot offend any law of any state. War against the United States is not war against any particular state. Treason against the federal government is not treason against the state of Montana.

The foregoing is discussed fully in *People* v. *Lynch*, 11 Johns. (N. Y.) 549; *Ex parte Quarrier*, 2 W. Va. 569.

The emergency clause of the Act does not add any strength to the Act. (*Northwestern Mfg. Co.* v. *Wayne Cir. Judge (Chambers)*, 58 Mich. 381, 55 Am. Rep. 693, 25 N. W. 372, 373; *Western Union Tel. Co.* v. *James*, 162 U. S. 650, 40 L. Ed. 1105, 16 Sup. Ct. Rep. 934; *Henderson* v. *New York*, 92 U. S. 259, 23 L. Ed. 543.)

*Freedom of Speech and of the Press:* The sedition law violates the first amendment to the federal Constitution and section 10 of Article III of the state Constitution, because the first portion thereof takes away the intent of the person who shall "utter, print or publish" the forbidden language. "Calculated" is the word used. From the wording of the Act and the obvious meaning of its terms, the word "calculated" does not mean what the one using the forbidden language intended. The intent or purpose with which the language complained of is used cannot be considered by the jury which should try the offender. The only question for the jury would be: "Do you believe the language, viewed in the ordinary acceptance of its terms, would tend or be liable to incite or inflame resistance?" No law of this character has ever gone so far. The Espionage Act of 1917 and the amendment thereto in May, 1918, both use the word "willfully," and the amendment uses the word "intended" where the Act under consideration uses "calculated." Otherwise, the federal amendment is almost in the exact words of our sedition law.

Our own Constitution gives free rein to spoken or written words, except that a person shall be "responsible for all abuse of that liberty." That phrase is written into all decisions covering the first amendment to the federal Constitution. It is the dividing line between liberty and license or lawlessness; and to come within the bounds of the "responsibility," there must have been an intent to "incite, inflame or obstruct"; that is, the language complained of must have been uttered "willfully." "Willfully" means a deliberate purpose to accomplish something forbidden by the law. "Every man is responsible criminally

for, what of wrong flows directly from his corrupt intentions."
(Bishop on Criminal Law, 641; *United States* v. *Schutte*, 252
Fed. 212; *United States* v. *Krafft*, 249 Fed. 919, 162 C. C. A.
117; *United States* v. *Pierce*, 245 Fed. 878, 883; *Republica* v.
*Dennie*, 4 Yeates (Pa.), 267, 2 Am. Dec. 402.) In 1798, Con-
gress enacted what is known as the "sedition law." It expired
by its own limitation in 1801, and has never been renewed,
because of the resentment of the people. (Cooley's Constitu-
tional Limitations, 613, 615–617.) '

The language charged as seditious was spontaneous and not
deliberate, and was the result simply of a conversation between
the defendant and another, and it is impossible to arrive at the
intent or purpose of the defendant except as he explains the use
of the language upon this occasion in his testimony in this case.
The law contemplates a willful, deliberate purpose to disobey
its provisions, and any statements not deliberately and premedi-
tatedly made with such an intent could not be construed as sedi-
tious. (*State* v. *Spartz*, 140 Minn. 203, 167 N. W. 547.) The
case of *Rex* v. *Trainor, Alberta,* 27 Can. Crim. Cas. 232, is a
case which covers the one at bar in its entirety.

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,*
Assistant Attorney General, for the State, submitted a brief;
*Mr. Woody* argued the cause orally.

*War-making Power of Congress:* The state contends that, in
matters incidental to the war-making power and incidental
to the maintenance of the army and navy, and purely local,
the states possess certain legislative powers. As illustrative
of the principle just announced, we refer the court to the
case of *State* v. *Holm,* 139 Minn. 267, L. R. A. 1918C, 304,
166 N. W. 181. The legislature of Minnesota enacted what
was termed an espionage law. Thereafter Congress enacted
the espionage law, Act of June 15, 1917. One Holm was
convicted of a violation of the Minnesota law and contended that
the Act of Congress abrogated and superseded the state law,
both laws being very similar. The supreme court of Minnesota

held otherwise, and sustained the conviction. (See, also, *Halter v. Nebraska,* 205 U. S. 34, 10 Ann. Cas. 525, 51 L. Ed. 696, 27 Sup. Ct. Rep. 419.) The fact that the war-making power is vested in the federal government exclusively does not deprive the state of its power under its police regulations to regulate its internal affairs. The statute under consideration is nothing more nor less than police regulation. This is plainly disclosed by section 3 of the Act which declares that the Act is an emergency measure and necessary for the immediate preservation of the public peace and safety,—that is, the peace and safety of the citizens of the state. (12 C. J., 904, 908.)

We contend that even a case where the authority of Congress is absolutely exclusive, and Congress has seen proper to legislate upon the subject, it is still within the power of the state to adopt police regulations, on the same subject, if it sees fit, so long as these police regulations are not in contravention of any provision of the federal Constitution, or are not in conflict with a valid federal statute, and so long as it does not constitute an interference with matters that are within the exclusive scope of federal power. (*Presser* v. *Illinois,* 116 U. S. 252, 29 L. Ed. 615, 6 Sup. Ct. Rep. 580; *Ex parte Hollingsworth* (Tex. Cr.), 203 S. W. 1102; *Reid* v. *Colorado,* 187 U. S. 137, 47 L. Ed. 108, 23 Sup. Ct. Rep. 92.)

*Freedom of Speech and of the Press:* Counsel for appellant insists that the Act in question violates the provisions of the first amendment to the federal Constitution and of section 10 of Article III of the Constitution of this state, basing such contention on the fact, which he assumes to be true, that intent is not made an essential element of the offense defined in the Act. The provisions of the first amendment to the federal Constitution, and provisions of state Constitutions, similar to those found in section 10 above, have frequently been before the courts for construction. In the celebrated case of *People* v. *Most,* 71 App. Div. 160, 75 N. Y. Supp. 591, the court said: "In the eye of the law each citizen has an equal right to live and act, and to enjoy the privileges of the laws of the state under which he lives,

but no one has the right to use the privileges thus conferred in such a way as to injure his fellow-citizens, and one who imagines that he has labors under a serious misconception, not only of the true meaning of the constitutional provision referred to, but of his duty to his fellow-citizens and to the state itself.'' (See, also, *People* v. *Croswell,* 3 Johns. Cas. (N. Y.) 337.) In *Warren* v. *United States,* 183 Fed. 718, 33 L. R. A. (n. s.) 800, 106 C. C. A. 156, the court said: ''Liberty and freedom of speech guaranteed by the Constitution does not mean the unlicensed right to do and say what one pleases at all times and under all circumstances.''

It is not always necessary that intent be made an essential element of a crime, and statutes may define a crime, irrespective of the intent with which the Act constituting the crime is committed.    (1 Wharton on Criminal Law, secs. 108–113.)

Odgers, speaking of seditious libel, an offense analogous to the offense defined in the Act under consideration, says: ''The test whether the statement is seditious libel is not either the truth of the language or the innocence of the motive with which the statement is published, but is this: Is the language calculated to promote public disorder, or physical force or violence in a matter of state?''    (Odgers on Libel and Slander, 513; citing *Rex* v. *Aldred,* 74 J. P. 55, 22 Cox C. C. 1.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The defendant was convicted of the crime of sedition, and has appealed from the judgment and from an order denying his motion for a new trial.

The attorney general insists that the new trial proceedings were not properly before the lower court and that its action thereon is not subject to review.    The question raised involves the right or authority of the county attorney, after the statutory time for filing a notice of intention to move for a new trial had expired, to stipulate that the notice might be filed out of time and the motion heard without objection upon that ground.    The

principal questions presented by appellant may be raised on the appeal from the judgment, and because of this fact, and because of the importance of the case, we reserve our opinion upon the attorney general's objection.

The information charges that on March 6, 1918, in Carbon county, Montana, the defendant willfully, seditiously and feloniously did utter the language following: "This is a rich man's war, and we have no business in it. They talk about Hooverism—it's a joke. Nobody pays any attention to it. It don't amount to anything. The 'Lusitania' was warned not to sail. They were carrying munitions and wheat over for the Allies. The poor man has no show in this war. The soldiers are fighting the battles of the rich."

It is the contention of appellant that the Act defining sedition [1] (Chapter 11, Laws of the Extraordinary Session, 15th Legislative Assembly 1918) is unconstitutional, in that the subject matter of the Act is one national in character, with respect to which the Congress of the United States alone may legislate. The argument proceeds upon the assumption that the several states have surrendered to the general government the exclusive authority to define sedition and prescribe punishment for it.

The government of the United States is one of delegated powers, but, within the limits prescribed by the Constitution, its authority is supreme. The Constitution of the United States, the laws enacted and treaties made in pursuance thereof, constitute the supreme law of the land, binding upon the courts, anything in the Constitution or laws of the state to the contrary notwithstanding. (Article VI, U. S. Constitution.) If the people by express declaration, or by necessary intendment, have surrendered to the general government the authority to define sedition, it follows as of course that they themselves may not do so. The converse is equally true. "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively or to the people." (Tenth Amendment, U. S. Constitution.)

It is not contended that the exclusive authority to define sedition is conferred upon the Congress by express provision of the Constitution; but it is insisted that the grant of such authority is necessarily implied from the comprehensive language employed in section 8, Article I, in defining the war powers of the general government. The Congress alone has authority to declare war, to raise and support armies, to provide and maintain a navy, to make rules for the government and regulation of the land and naval forces, and to make all laws necessary and proper for carrying into execution the powers vested by the Constitution in the government of the United States or in any department or officer thereof. (Sec. 8, Article I.) A state may not without the consent of Congress engage in war unless actually invaded or in such imminent danger as will not admit of delay. (Sec. 10, Article I.) In conferring upon the general government the powers enumerated above, the intention was made manifest to surrender all war powers, as such, retaining to the states only that moiety of authority necessary to be exerted in the presence of the exigencies mentioned in the concluding clause of section 10 above. (*Arver* v. *United States,* 245 U. S. 366, Ann. Cas. 1918B, 856, L. R. A. 1918C, 361, 62 L. Ed. 349, 38 Sup. Ct. Rep. 159.) But it does not follow that because this state may not declare war or engage in war, independently of the general government, it may not aid the government in carrying on a war to a successful conclusion and exert all of its efforts in that behalf. The right and duty of the state to assist in defending the United States in time of war is recognized by express declaration of our Constitution. (Sec. 12, Art. XII.) In *State ex rel. Campbell* v. *Stewart,* 54 Mont. 504, Ann. Cas. 1918D, 1101, 171 Pac. 755, we considered this question and said: ''The United States is at war, and to assist the United States in war is expressly recognized by the Constitution as a proper and probable occasion for the use of state funds. (Const., Art. XII, sec. 12.) Moreover, this state, as one of the United States, is at war. When aiding the United States, this state but defends itself, and thus exercises the highest attribute, as it observes the most solemn duty, of sovereignty.

That in pursuing this public purpose the state, through its legislature, may adopt or prescribe any mode or means reasonably adapted to accomplish such purpose, is too well settled for debate.'' Of the correctness of that conclusion we entertain no doubt, and, so long as the Act in question does not conflict with the provisions of the Constitution of the United States or with the laws enacted in pursuance thereof, it is not open to the objection urged against it.

The subject was recently treated at length by the supreme court of Minnesota, and a statute having the same general purpose in view was upheld.    (*State* v. *Holm,* 139 Minn. 267, L. R. A. 1918C, 304, 166 N. W. 181.)    In the notes to that case, reported in L. R. A. 1918C, 304, it is said that the conclusion reached seems to be clearly in accord with the interpretation placed by earlier decisions on the federal Constitution and laws of Congress enacted pursuant thereto, although no case of a precisely similar nature has been found.

In view of the important part played by the several states in the wars in which this country has been engaged, we think it cannot be contended successfully that in granting the war powers to Congress the states divested themselves of all authority to aid the general government in time of war. If this state has the power to assist the United States in war, then the means through which the power is exerted is a proper subject of legislative discretion and judgment.  Our conclusion upon this branch of the case is that our Sedition Act does not infringe upon the exclusive war powers of Congress.

2. It is urged that the statute violates the guaranty of free [2] speech contained in the Constitution of the United States and in the Constitution of Montana.  The first amendment to the Constitution of the United States is a limitation upon the authority of the Congress and not a restriction upon the states. (*Spies* v. *Illinois,* 123 U. S. 131, 31 L. Ed. 80, 8 Sup. Ct. Rep, 22.)    Section 10 of our Bill of Rights declares: ''No law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject,

being responsible for all abuse of that liberty." Neither Constitution was ever intended to extend immunity for every use or abuse of language. One's words, like his acts, take character from the surrounding circumstances. In time of peace the language employed by this defendant, or language of similar import, might not constitute a crime, and it may be true that it is beyond the power of the legislature to make its use a crime in time of peace; but, as said by the supreme court of the United States: "When a nation is at war many things that might be said in time of peace are such a hindrance to its effort that their utterance will not be endured so long as men fight, and that no court could regard them as protected by any constitutional right." In every one of the following cases the accused sought refuge behind the guaranty of free speech, but in every instance the appeal for protection of the seditious utterances was denied: *Schenck* v. *United States,* 249 U. S. 47, 63 L. Ed. 289, 39 Sup. Ct. Rep. 247, decided March 3, 1919; *Frohwerk* v. *United States,* 249 U. S. 204, 63 L. Ed. 306, 39 Sup. Ct. Rep. 249; *Debs* v. *United States,* 249 U. S. 211, 63 L. Ed. 309, 39 Sup. Ct. Rep. 252.

3. It is insisted that the statute characterizes certain acts as criminal without reference to the intent. The statute [3–5] declares that, whenever the United States shall be engaged in war, any person or persons who shall utter, print, write or publish any language calculated to incite or inflame resistance to any duly constituted federal or state authority in connection with the prosecution of the war, *etc.,* shall be guilty of the crime of sedition. Sedition was a crime unknown to the common law; the nearest approach to it was libel of the Constitution or government, but that offense has never been recognized by the states of this Union. Sedition is a purely statutory offense, and our Act is declared to be, and is in fact, a general police regulation. It is elementary that for the preservation of the peace, the safety of the people, and the good order of society, the legislature may prohibit certain acts, and attach a penalty for disobedience, without including any evil intent as an ingredient of the offense other than the general intent implied from a violation of the stat-

ute. (12 Cyc. 148; 8 R. C. L. 62.) But the provision of the statute is, "shall utter language *calculated* to incite or inflame resistance," *etc.* Primarily the word "calculate" means to compute mathematically, and it implies power to think, to reason, to plan. In its broader significance it means to intend, to purpose, to design. (Century Dictionary; Standard Dictionary.)

It is a rule of universal recognition that in testing the validity [6] of a statute subject to two constructions, one of which will uphold its validity while the other will condemn it, the former will be adopted if it can be done without violence to the fair meaning of the words. (*State ex rel. General El. Co.* v. *Alderson,* 49 Mont. 29, 140 Pac. 82.) Viewed in the light of the context and the broad significance of the term "calculated," it is not a strained construction of this statute to imply intent from the language employed.

4. No restraint was imposed upon the defendant in his efforts [7] to disclose to the jury his attitude toward this government after it became involved in the war and before the alleged offense was committed. The interest which he had displayed in the soldiers' welfare, in the Red Cross and allied activities, in the campaigns for the sale of liberty bonds and war savings stamps, was pictured graphically, and his general reputation for loyalty to the United States was attested by several witnesses. P. H. Doyle, a newspaper man, was asked whether he had "ever heard any statements which were loyal to this government." An objection was sustained, and counsel for defendant then made the following offer: "The defendant offers to prove by the witness Pat Doyle that the defendant prior to March 6, 1918, and after the United States entered the war, frequently discussed the war and the relations of the United States toward it, and gave utterances always favorable to the United States, and spoke favorably of our prosecution of the war and of our soldiers and sailors, and, generally, utterances indicating his loyalty to the United States and his loyal intent." The offered evidence was rejected, and error is predicated upon the ruling. The declarations, if made, were made out of court, when the defendant was not under oath

nor subject to cross-examination. They do not fall within any exception to the general rule which excludes such evidence and were properly rejected. (2 Wharton on Criminal Evidence, secs. 690–694.)

5. Complaint is made that instructions 2 and 16 are contradictory and misleading. Instruction 2 was given at the instance [8] of the state and without objection from defendant, while instruction 16 was given at the instance of the defendant himself. The argument of defendant's counsel upon this assignment is answered by our Code. Section 9271, Revised Codes, provides:

"No motion for a new trial on the ground of errors in the instructions given shall be granted by the district court unless the error so assigned was specifically pointed out and excepted to at the settlement of the instructions, as herein provided; and no cause shall be reversed by the supreme court for any error in instructions which was not specifically pointed out and excepted to at the settlement of the instructions herein specified, and such error and exception incorporated in and settled in the bill of exceptions as herein provided." (*State* v. *Cook*, 42 Mont. 329, 112 Pac. 537.)

6. Error is predicated upon the refusal of the court to give defendant's offered instruction No. 13 upon the subject of the defendant's reputation for loyalty to this government. The [9] offered instruction is subject to the objection that it is argumentative; but, aside from this criticism, it is sufficient to say that the court gave instruction 10, which fully covers the subject.

But counsel argues that instruction 10 deals with the [10] defendant's general reputation rather than with his reputation for loyalty. The only evidence introduced upon the subject related to defendant's reputation for loyalty, and the jury must have understood the instruction as applicable to that evidence alone. Furthermore, instruction 10 was given at the request of defendant, and he cannot now be heard to say that it has to do with a subject which in no way entered into the trial of the case.

7. In discussing the insufficiency of the evidence, counsel for [11] appellant adopts the defendant's version of the transaction, which differs materially from that given by the state's witnesses. The offensive language was employed by the defendant in a conversation between him and T. F. Pollard in the hotel office in Red Lodge. According to the witnesses for the prosecution, defendant used the language substantially as charged in the information and quoted above. Defendant admits that he said: "This is a rich man's war"; "Hooverism is a joke." "The 'Lusitania' should not have went [gone] over there." He explained fully his meaning in using these expressions, and it was then for the jury to determine whose version of the conversation was correct. Defendant cannot now take refuge behind the argument that whatever he said was a mere chance expression or spontaneous outburst without deliberation. He was warned by Pollard early in the conversation to desist from the use of such language, but persisted, until Pollard called him pro-German and other uncomplimentary names. There is ample evidence to justify the verdict, which is, in effect, a finding that the defendant used the language substantially as set forth in the information, and, upon the assumption that he did use that language, then it was for the jury to say further whether the natural tendency and reasonably probable effect of the language was to incite or inflame resistance to a duly constituted federal or state authority in connection with the prosecution of the war. (*Debs* v. *United States*, above.)

The Espionage Act of June 15, 1917 (40 Stat. 217, Chap. 30), [12] was considered in the *Schenck* and *Frohwerk Cases*, and the same Act as amended was before the court in the *Debs Case*. The federal Act is similar in all respects to our sedition statute, and the construction given to it by the supreme court of the United States, if not conclusive upon us, is entitled to the greatest respect. Without entering upon a further discussion, we content ourselves with a reference to those recent cases as expressing our views upon the Act in question.

The defendant appears to have been accorded a fair and impartial trial. The record presents no reversible error.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE COOPER concur.

(Submitted April 29, 1919.    Decided May 28, 1919.)