GREAT WESTERN SUGAR CO., RESPONDENT, *v.* MITCHELL, SECRETARY OF STATE, APPELLANT.

No. 8654

Submitted October 22, 1946. Decided November 26, 1946.

174 Pac. (2d) 817

Mr. R. V. Bottomly, Atty. Gen., and Mr. Clarence Hanley, Asst. Atty. Gen., for appellant.

Messrs. Gunn, Rasch & Gunn, of Helena, for respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action is to recover taxes paid under protest. Defendant's general demurrer to the second amended complaint was overruled. He refused to plead further and judgment was entered for plaintiff, from which defendant has appealed.

The essential allegations of the complaint are these: That plaintiff is a New Jersey corporation, organized in that state in 1905; that on February 19, 1916, it filed in the office of the secretary of state of Montana a duly certified copy of its articles of incorporation, for the purpose of qualifying to do business in this state, and paid for the filing thereof the fee prescribed by section 1 of Chapter 37 of the Laws of Montana of 1915; that in February, 1945, plaintiff filed a verified report stating the proportion of its capital stock represented in Montana by its property located and business transacted therein during the year 1944, as required by section 4 of Chapter 169 of the Laws of 1931, now section 145.4, Revised Codes; from the report it appears that the proportion of plaintiff's capital stock so repre-

sented in Montana during the year 1944 was of the value of $8,193,645, which was an increase of $5,540,145 over the value thereof represented in this state prior to the year 1931; that between the first days of January and March, 1934, plaintiff filed its annual report for the year 1933, as required by section 4, Chapter 169, Laws of 1931, which showed a greater proportion of its capital stock represented by its property and business in Montana for 1933 than that upon which the fee for filing its articles was based, and paid to the secretary of state the sum of $516.68, being the fee for the additional amount represented in Montana for the year 1933, which fee was calculated according to the provisions of section 1, Chapter 37, Laws of 1915; that at the time of filing the report in 1945, the defendant demanded of plaintiff payment of the sum of $929.91, as an additional fee, based upon the increase in the amount of plaintiff's capital stock represented in Montana, as shown by the report. In arriving at that sum, it is alleged, the defendant calculated and determined the additional fee according to the schedule of fees prescribed by section 1, Chapter 169, Laws of 1931, Rev. Codes, sec. 145.1, which amounted to the sum of $1,478, upon which defendant allowed a credit of $516.68, the fee paid in 1934, and the sum of $31.41 tendered with the report filed in 1945, which sum of $31.41 was the correct amount of the additional fee payable when calculated and determined according to the schedule of fees prescribed by section 1, Chapter 37, Laws of 1915.

The question involved is whether the additional fee of plaintiff corporation must be measured by the rate provided in Chapter 37, Laws of 1915, as contended by plaintiff or by the rate provided in Chapter 169, Laws of 1931, now sec. 145.4, as contended by defendant. That Chapter 37 does not apply we think is clear. It is no longer in effect.

It was entirely supplanted by Chapter 132, Laws of 1923. Chapter 132 doubled the fees to be paid and increased the minimum fee from $20 to $50. It repealed all acts and parts of acts in conflict with it. Section 4 of that Act provided: ''Whenever such report shall show a greater proportion of the capital stock ·

of such foreign corporation represented by its property and business in Montana than that upon which the fee for filing was based, such foreign corporation at the time of filing such report, shall pay such additional fee as it would have been required to pay for filing if such fee has been calculated on the basis of the proportion of the capital stock represented by its business and property in Montana as shown by such report; Provided, that all foreign corporations which have entered Montana for the transaction of business subsequent to February 27, 1915, up to the time when this law shall become effective, shall pay only upon the actual amount of increase in proportion of capital employed in Montana as shown by this report at the rates set out above, but this law shall in no way be considered to authorize collection of fees upon capital stock of such corporations as are in this provision referred to whereby such collection would cause such corporation or corporations to pay upon its entire proportion of capital employed in Montana at the schedule of rates set forth in Section One of this Act.''

The proviso in that section constitutes a legislative interpretation of what the legislature meant by what precedes the proviso. ''The natural and appropriate office of a proviso is * * * to except something from the enacting clause, to limit, restrict, or qualify the statute in whole or in part, or to exclude from the scope of the statute that which otherwise would be within its terms.'' (50 Am. Jur., p. 457.) This is not always the function of a proviso, however, as the author continues to point out in 50 Am. Jur., p. 457. And see 59 C. J., p. 1087 et seq. It may have the meaning of the conjunction ''and.'' State ex rel. Board of County Com'rs of Valley County v. Bruce, 104 Mont. 500, 69 Pac. (2d) 97. As used in section 4 above, it is clear that the legislature intended to limit or restrict what had gone before and to exclude from the scope of the statute that which it evidently thought might otherwise be within its terms.

In other words, the obvious legislative intent from the language preceding the proviso was that the increased rate should apply to all foreign corporations. Out of excess precaution the

legislature added the proviso to make sure that the increased rate would apply only to the increased capital shown by its report to be represented by Montana business and property and not to that part upon which it had already paid a fee upon filing its articles.

If what precedes the proviso were intended to apply to the rate in effect when the corporation entered the state, then the proviso would be meaningless because in and of itself it does not impose the higher rate but assumes that without the proviso the higher rate applies and the proviso simply assumes to restrict the higher rate to the actual increase in capital represented by Montana business and property over and above that shown at the time of filing its articles. Actually, the proviso adds nothing to section 4 because its provisions without the proviso affected only such increased capital. It does, however, indicate what the legislature thought it had done by the language preceding the proviso.

The question then remains as to whether the provisions of Chapter 169, Laws of 1931, now sections 145.1 to 145.7, which have supplanted Chapter 132, Laws of 1923, have application and if so whether that Act prescribes the applicable fee for increased capital shown by the annual reports.

It should be noted that Chapter 95, Laws of 1925, re-enacted the provisions of Chapter 132, Laws of 1923, except that the fee was calculated on the "authorized capital stock" instead of on the "capital stock." The 1925 Act was condemned by this court in Chicago, M., St. P. & P. R. Co. v. Harmon, 89 Mont. 1, 295 Pac. 762, 764.

Chapter 169, Laws of 1931, is practically a re-enactment of Chapter 132, Laws of 1923, excepting that it omits the proviso in section 4 of Chapter 132 and a change was made in section 5 which is of no moment here. It expressly repeals Chapter 132, Laws of 1923, and Chapter 95, Laws of 1925, and all other acts and parts of acts in conflict therewith. Section 7-A of the Act, now sec. 145.7, provides that the Act shall not apply to corporations which entered Montana for the transaction of busi-

ness prior to February 27, 1915. In the Harmon case, supra, this court recited the contents of Chapter 95, Laws of 1925, and as to section 4, which is the same as section 145.4 except that it uses the words "authorized" capital stock, the court stated: "'Section 4. Whenever such report shall show a greater proportion of the authorized capital stock * * * represented by its property and business in Montana than that upon which the fee for filing was based, such foreign corporation at the time of filing such report, shall pay such additional fee as it would have been required to pay for filing if such fee had been calculated' at the time of filing its articles."

The words "at the time of filing its articles" were not in the statute. There was in that case no issue raised or presented as to which of two rates applied. The only issue was whether the tax could properly be computed on the authorized capital stock. What was said by the court that might be said to be a construction of section 4 was dictum.

The statute meant, however, what the court said as applied to the situation then under consideration because there had at that time been no intervening amendment. We have here a subsequent amendment and hence have before us a different situation. To arrive at the legislative intent, the whole of Chapter 169, Laws of 1931, must be considered.

Section 1 of that Chapter, now section 145.1 Revised Codes, of 1935, provides for the filing of a fee based in amount upon a graduated scale. In part it provides: "That every foreign corporation required by law to file in the office of the secretary of state a certified copy of its charter or articles of incorporation shall pay to the secretary of state for the filing thereof as follows:

"Upon the proportion of its capital stock then or thereafter to be represented by its property and business in Montana at the rate of * * *." (Here follows graduated rate.)

Section 2, being section 145.2, Revised Codes of 1935, requires the filing of an annual statement "stating the proportion of its capital stock represented in the state of Montana by its property

located and business transacted therein during the preceding year."

Section 145.3 provides for the method of determining the proportion of capital stock employed in the state.

Then section 145.4 provides: "Whenever such report shall show a greater proportion of the capital stock of such foreign corporation represented by its property and business in Montana than that upon which the fee for filing the charter or articles of incorporation was based, such foreign corporation at the time of filing such report, shall pay such additional fee as it would have been required to pay for filing if such fee had been calculated on the basis of the proportion of the capital stock represented by its business and property in Montana as shown by such report."

The precise question here is: Should the additional fee arising because of the increased capital stock represented by Montana business and property as shown by the annual report, be based upon the rate prevailing in 1915 when the articles were filed or upon the rate established by the 1931 law which was the law in force at the time covered by the annual report.

If the 1915 law prescribes the applicable rate it must be because Chapter 169 in some manner revived or adopted the 1915 law. It is competent for the Legislature to adopt a statute by reference. Gustafson v. Hammond Irr. Dist., 87 Mont. 217, 287 Pac. 640.; State ex rel. Berthot v. Gallatin County H. S., 102 Mont. 356, 58 Pac. (2d) 264. Whether a repealed act may be adopted by reference we need not decide. If we assume that this may be done (see 59 C. J. 618), before it may be accomplished there must be a clear legislative intent so to do. (50 Am. Jur. 574, note 12) There is no language in Chapter 169 that indicates any such legislative intent.

That Chapter 169 was intended to fix the rate for all corporations increasing their capital stock represented by business and property in Montana since February 27, 1915, the date of the enactment of Chapter 37, Laws of 1915, is apparent by the

provision in Section 7-A that it shall not apply to those entering before that date.

Section 145.4 is not without ambiguity but when considered with the history of the legislation and in order to give effect to the evident legislative intent, we hold that the rates provided in Chapter 169 apply to this corporation in fixing the additional fee. This conclusion is fortified by the fact as above noted that the proviso in section 4 of Chapter 132, Laws of 1923, constituted a legislative interpretation that the higher rate applied because of what preceded the proviso in the 1923 Act and Chapter 169 made no change in the 1923 Act outside of the proviso that would affect the question here.

As above noted the proviso in section 4 was surplusage since the Act affected merely the increased capital shown by the report and its elimination did not affect the legislative purpose or intent. By adopting without substantial change that part of section 4, Chapter 132, Laws of 1923, in the 1931 Act which the legislature itself had interpreted as imposing the higher rate, it must be presumed that it was the legislative intent that the higher rate still applies.

It is the law in effect at the time the increased capital stock is represented by Montana business and property that measures the amount of the fee. The mandate of the statute is that the corporation shall pay ''such additional fee as it would have been required to pay for filing if such fee had been calculated on the basis of the proportion of the capital stock represented by its business and property in Montana as shown by such report.''

What the statute means is that the additional fee must be calculated on the basis of the proportion of capital stock in Montana as shown by the report and reckoned as if the corporation, as to the excess capital in Montana, were filing its charter or a certificate of increased capital stock at the time of filing the report. That is the effect of the operation of the statute as to domestic corporations. Section 145, Revised Codes of 1935. Any other interpretation would result in unfair discrimination be-

tween foreign corporations which entered Montana before March 8, 1923, the effective date of Chapter 132, Laws of 1923, and when the rates now in effect by section 145.1 were first adopted and those entering after that date as to any increase in the proportion of capital stock represented by Montana business and property. The exaction is a license for the privilege of engageing in business. State ex rel. General Electric Co. v. Alderson, 49 Mont. 29, 140 Pac. 82. The value of that privilege as affected by the increased capital in Montana should be measured by the law in effect at the time of such increase. Had Chapter 169 of the Laws of 1931 reduced the rate from what it was in 1915 it would obviously be unfair to impose the larger fee provided for in 1915 as to increased capital not put to use in this state until in 1944 as here.

Incidentally it should be said that when once the fee is paid for an increase of the capital stock represented by business and property in Montana no other fee is due or payable until a subsequent report shows a further increase of the capital stock represented by Montana business and property over that shown by any preceding report.

The result we have reached does not impair the obligation of a contract contrary to the Constitution nor does it permit domestic corporations to enjoy greater advantages than accorded to foreign corporations contrary to the holding in American Smelting & Refining Co. v. People of State of Colorado ex rel. Lindsley, 204 U. S. 103, 27 S. Ct. 198, 51 L. Ed. 393, 9 Ann. Cas. 978. On the contrary were we to follow the contention of plaintiff then foreign corporations would be permitted to enjoy greater rights and privileges in Montana than domestic corporations, contrary to section 11, Article XV of our Constitution, and we would be obliged in proper proceedings to condemn the law so far as it affects domestic corporations. This we should not do if the two acts may be reconciled. And when the Act under consideration is capable of more than one construction we should adopt the one that will harmonize the two Acts and make them non-discriminatory and hence valid.

338

Domestic corporations, since the enactment of Chapter 91, ██ Laws of 1921, which with amendment is now section 145, Revised Codes, are required to pay the same increased rate for increased capital stock as is required by the foreign corporations under section 145.1. Prior to that time domestic corporations by section 165, Revised Codes 1907, took the same rate as foreign corporations under Chapter 37, Laws of 1915. The history of legislation on this subject shows that the legislature has made a studied effort to treat foreign and domestic corporations on a plane of equality.

That this is so is shown first by section 4413, Revised Codes of 1907, which deals with foreign corporations and provides: "* * * and whenever any such corporation increases its capital stock or continues its corporate existence, it shall pay to the Secretary of State at the time of filing in his office the duly authenticated copy of the certificate thereof, the same fee that is required by law from domestic corporations for filing certificates of increase of capital stock or certificates of corporate existence." Both were subjected to the same fee under section 165, Revised Codes of 1907. But this section was held unconstitutional in Chicago, M. & St. P. R. Co. v. Swindlehurst, 47 Mont. 119, 130 Pac. 966, as to foreign corporations engaged in interstate commerce; and in State ex rel. General Electric Co. v. Alderson, supra, it was held that section 165 was valid so far as it applied to foreign corporations doing an intrastate business. Subsequent legislation on the subject was designed to reach only the intrastate business of a foreign corporation and there never has been any design or purpose to discriminate against foreign corporations in favor of domestic ones.

What changes have been made from the original plan of taxation have been made with the single purpose of attempting to meet constitutional objections pointed out by the courts and not with any purpose of discrimination. Foreign corporations are not entitled to greater rights or privileges than domestic corporations. Section 11, Article XV of the Montana Constitution; Lewis v. Northern Pac. R. Co., 36 Mont. 207, 92 Pac. 469.

It is contended by plaintiff that the fee of a domestic corporation is for the right to issue stock and hence is different from the fee exacted of a foreign corporation relying upon the case of Chicago, etc., R. R. Co. v. Harmon, supra.

It is true that the precise right for which the fee is exacted is worded differently with respect to the two classes of corporations, i. e. foreign and domestic. However, we think the two exactions result in substantial equality in treatment and are "in substance and effect" (American Smelting & Refining Co. v. People of State of Colorado ex rel. Lindsley, supra, [204 U. S. 103, 27 S. Ct. 201]) the same as a practical matter. If either class of corporations is discriminated against it would be the domestic which has to pay upon the amount of capital stock issued regardless of how little or how much may be represented by Montana business or property. But this plaintiff cannot complain if domestic corporations are discriminated against.

The judgment is reversed and the cause remanded with directions to set aside the order overruling and to enter an order sustaining defendant's demurrer to plaintiff's complaint.

The opinion promulgated herein on the 24th day of June, 1946, is hereby withdrawn and this one substituted therefor.

Mr. Chief Justice Lindquist and Associate Justices Adair and Morris concur.

Mr. Justice Cheadle (dissenting).

The question involved is whether the fee for filing the annual report for the year 1944 should be calculated according to the schedule of fees prescribed by section 1, Chapter 37, Laws of 1915, the statute in effect at the time plaintiff qualified to do business, or according to the schedule prescribed by section 1, Chapter 169, Laws of 1931, the statute in effect at the time of filing the report. Respondent suggests the incidental question of the constitutionality of Chapter 169, Laws of 1931, should the schedule of fees therein provided control.

Section 1, Chapter 37, Laws of 1915, prescribes a graduated

scale of fees to be paid by every foreign corporation upon filing its Articles in the office of the secretary of state. Section 2 of that statute provides for the filing of an annual report by such corporation, stating the proportion of its capital stock located and business transacted therein during the preceding year. Section 3 provides the method of computing the increase in the capital stock represented. Section 4 provides:

"Whenever such report shall show a greater proportion of the capital stock of such foreign corporation represented by its property and business in Montana than that upon which the fee for filing * * * was based, such foreign corporation at the time of filing such report, *shall pay such additional fee as it would have been required to pay for filing if such fee had been calculated on the basis of the proportion of the capital stock represented by its business and property in Montana as shown by such report.*" (Emphasis mine.)

Section 1, Chapter 169, Laws of 1931, now section 145.1, Rev. Codes, provides a schedule of fees for the filing of Articles of incorporation by foreign corporations, in double the amounts prescribed by the 1915 Act, except that the minimum fee is fixed at $50 instead of $20. Section 4 of the 1931 Act is identical with section 4 of the 1915 Act, with the exception that the words "the charter or articles of incorporation" were inserted after the word "filing" first appearing in the latter Act.

Prior to the enactment of Chapter 37, Laws of 1915, the fee schedule of both domestic and foreign corporations was prescribed by section 165, Revised Codes of 1907, which was declared unconstitutional by this court in Chicago, M. St. P. & P. Ry. Co. v. Swindlehurst, 47 Mont. 119, 130 Pac. 966. Thereafter, the Legislature enacted Chapter 37, Laws of 1915. Chapter 91, Laws of 1921, amended section 165, Revised Codes, 1907, and repealed Chapter 37, Laws of 1915. In J. I. Case Threshing Mach. Co. v. Stewart, 60 Mont. 380, 199 Pac. 909, this court declared Chapter 91 invalid, and consequently, Chapter 37, Laws of 1915, remained in effect. In the 1923 session the Legislature enacted Chapter 132, with provisions essentially similar

to Chapter 37, Laws of 1915, with the exception of increased fees. Chapter 95, Laws of 1925, re-enacted the provisions of Chapter 132, Laws of 1923, except that it provided for calculation of fees on the "authorized capital stock" instead of on the "capital stock." The 1923 Act was declared unconstitutional by this court in Chicago M., St. P. & P. R. Co. v. Harmon, 89 Mont. 1, 295 Pac. 762. Section 4 of this Act was identical with section 4 of the 1915 Act. In construing that section the court in that case, said: "The fees in suit were demanded pursuant to the provisions of Chapter 95, Laws of 1925, which are, in part, as follows: '* * * Section 4. Whenever such report shall show a greater proportion of the authorized capital stock * * * represented by its property and business in Montana than that upon which the fee for filing was based, such foreign corporation at the time of filing such report, shall pay such additional fee as it would have been required to pay for filing if such fee had been calculated' *at the time of filing its articles*." (Emphasis mine.)

Under this construction the additional fees are to be calculated according to the schedule in effect at the time of filing the Articles. In other words, the amount of the additional fee is the difference between what was actually paid when the Articles were filed, and the amount which would have been required at that time had the original capital stock represented been equivalent to that shown in the report in question. The schedule of fees in effect at the time the Articles were filed was, of course, that prescribed by Chapter 37, Laws of 1915. Since section 4 of the 1915 and the 1931 Acts are identical, it would seem to follow that the result would be the same no matter which of these statutes is used as the basis for calculation. It is true that this was not the precise question presented and determined in the Harmon case, and the statement quoted may be regarded as dictum. Nevertheless I think it is a correct interpretation of section 4 of both Acts, the plain wording of which requires calculation of such additional fees in accordance with the fee schedule in effect at the time of filing the Articles of incorpora-

tion or charter of the foreign corporation involved. This may be demonstrated by the addition of a few words hereinafter italicized, to clarify the obvious meaning, making section 4 read thus:

"Whenever such *annual* report shall show a greater proportion of the capital stock of such foreign corporation represented by its property and business in Montana than that upon which the fee for filing *its articles* was based, such foreign corporation, at the time of filing such *annual* report, shall pay such additional fee as it would have been required to pay for filing *its articles* if such fee *for filing its articles* had been calculated on the basis of the proportion of the capital stock represented by its business and property in Montana as shown by such *annual* report." The Articles of plaintiff corporation were filed only once, in 1916, and obviously the increase in fee collectable now is the additional amount plaintiff would have been required to pay in 1916, if the fee had been calculated in that year on the basis of the proportion of its capital stock now employed in Montana. This construction was placed on the section by the secretary of state, the defendant here, when in 1934 he calculated the additional amount due from plaintiff on the fee schedule prescribed by the 1915 Act. The wording is not ambiguous. This being so, this court has no right to guess that the Legislature intended some meaning other than it clearly expressed by its language. Neither can this court safely substitute its notion of what the law should be for what the Legislature has so plainly declared it to be.

Appellant in his brief, after reviewing the legislative and judicial history of the Act, concludes that, "It will thus be seen that the same fees required of domestic corporations on increase of capital stock, is required of foreign corporations when its annual report shows an increase of capital stock." I am unable to perceive the logic of this conclusion. While undoubtedly the Legislature had and has power to provide for the achievement of such a result, I think it has not done so. The language of section 4 is not ambiguous; consequently the intention of the legislature must be determined from the clear import of that

language. It is not argued that the section is invalid as resulting in discrimination against domestic corporations, and that question is not presented. Should the situation existing require correction, proper legislative action is the remedy.

As stated, if the provisions of sections 145 and 145.4, result in discrimination against domestic corporations, that situation has no bearing in this case. It would seem that if either of those sections is invalid on the ground of discrimination it must be the former, and the question can be raised only by a party affected thereby. The logical and simple method of correcting this seeming inequity is by legislative amendment of one or the other of these sections. The achievement of the result contended for by the defendant here could be easily effected by the substitution of about one-quarter of the number of words presently used in section 145.4.

I cannot concur with the majority that the proviso found in section 4, Chapter 132, Laws of 1923 constitutes "a legislative interpretation of what the legislature meant by what precedes the proviso." As stated in the majority opinion, Chapter 132 of the Laws of 1923 was repealed and the proviso is not found in the present Act, section 145.4, Revised Codes of 1935. The legislative reason for eliminating the proviso is not apparent, and it might well be that the elimination was effected to avoid the prospect of having the law declared unconstitutional, as violative of contracts between the state and foreign corporations, pursuant to the holding of the Supreme Court in the case of American Smelting & Refining Co. v. People of State of Colorado ex rel. Lindsley, 204 U. S. 103, 27 S. Ct. 198, 51 L. Ed. 393, 9 Ann. Cas. 978.

I feel strongly that courts should remain alert against the infringement upon the prerogatives and functions of the legislative branch of the state government. It seems to me that the majority opinion places an interpretation on the meaning of section 145.4 clearly not intended by the legislature.